# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG DIVISION

**ELAINE NEIDIG,**

    **Plaintiff,**

v.                                            **CIVIL ACTION NO: 3:22-CV-161**
                                                            **Judge Groh**

**VALLEY HEALTH SYSTEM,**

    **Defendant.**

## AMENDED COMPLAINT

Plaintiff Elaine Neidig, individually and on behalf of all others similarly situated, amends her complaint, pursuant to this Court's September 23, 2025 order. *See* Scheduling Order (for phase one class certification proceedings), ECF No. 27. In support of her amended complaint, Plaintiff states as follows:

### JURISDICTION AND VENUE

1. Plaintiff Elaine Neidig ("Ms. Neidig") is a resident of Jefferson County, West Virginia.

2. Ms. Neidig brings this action individually and on behalf of all others similarly situated as set forth in the class definition below.

3. Defendant Valley Health System ("Valley Health") is a regional healthcare provider, registered to and conducting business in West Virginia with its principal place of business in Winchester, Virginia.

4. Valley Health maintains and operates six hospitals, two of which are in West Virginia.

5. Valley Health owns, maintains, and operates Winchester Medical Center.

6. Winchester Medical Center ("Winchester Medical") is a large hospital located in Winchester, Virginia.

7. Defendant operates facilities in Jefferson County and elsewhere in West Virginia.

8. Defendant regularly solicits by advertisement and otherwise for West Virginia patients to use their services and facilities in Winchester, Virginia.

9. The Defendant engaged with the Ms. Neidig by phone and mail and otherwise in West Virginia for the care which is the subject of this matter.

10. Venue is proper in this Court because the Plaintiff resides in Jefferson County and the defendant transacts business in Jefferson County, West Virginia.

## FACTS

11. Valley Health has advertised that on its website that its "vision" is

[f]ocusing on patients first, [and that] Valley Health will provide the communities we serve with quality health care that is easy to access, well-coordinated, and responsive to their needs. As valued leaders and partners, physicians will guide the health care team in achieving superior clinical outcomes. We will provide our employees with an environment that fosters professional growth, innovation, accountability and pride.[1]

12. Additionally, it advertised:

Valley Health: Partnering with Our Communities in Virginia & West Virginia

Here at Valley Health, we are passionate about ensuring that members of our communities have access to the best resources in the realm of care and wellness. Our team has a reputation for caring service marked by expertise and individualized service. Our community knows us, and they trust us. We bring together communities with the care they need and our community involvement is demonstrated by the ongoing funding and participation our not-for-profit health system receives from the counties and neighbors we serve.[2]

13. Defendant also advertised that,

---

[1] https://web.archive.org/web/20170511111634/http://www.valleyhealthlink.com/About-Us.aspx
[2] https://web.archive.org/web/20170512071112/http://www.valleyhealthlink.com/Our-Services/Women-Children.aspx

2

> Valley Health Offers Prevention & Treatment
>
> Early Detection Saves Lives
>
> Communities across Virginia and West Virginia can take advantage of state-of-the-art technology and knowledgeable staff at Valley Health imaging centers and outpatient diagnostic centers. Whether you are looking to schedule a routine mammogram or go in for a diagnostic ultrasound, our experienced staff can provide you with the services you need.
>
> Valley Health is proud to offer the latest technology in breast imaging, including 3D Mammography, Breast Ultrasound, Breast MRI and Molecular Breast Imaging (BSGI). Ask your provider if any of these services are right for you. If your desired scan or test is not available at the location closest to you, we can get you in touch with another one of our locations that offers the service.
> …
> Valley Health Breast Center
>
> The new, free-standing Valley Health Cancer Center has a dedicated Breast Center, which houses a comprehensive program for our patients. Women receiving cancer care will have access to a breast health navigator who provides personalized support, information and resources. The Breast Center is also conveniently located 100 steps away from the Winchester Medical Center Diagnostic Center. This means you are only 100 steps away from mammograms to results!
> …
> With enhanced early detection methods and advanced cancer care treatment, Valley Health is committed to beating cancer and helping our community live healthier, together.[3]

14. Defendant also advertised that "[t]he most advanced mammogram technology is available at all six Valley Health Hospital Imaging locations."[4]

15. On or around March 16, 2016, Ms. Neidig went to Winchester Medical Center for a mammogram.

16. Ms. Neidig chose to go from West Virginia to Winchester Medical for the mammogram based on the affirmative marketing and advertising of Valley Health into West Virginia.

---

[3] https://web.archive.org/web/20170417183808/http://www.valleyhealthlink.com/Our-Services/Cancer-Care/Breast-Health.aspx
[4] https://web.archive.org/web/20170411144804/http://www.valleyhealthlink.com/Our-Services/Radiology-Medical-Imaging/Mammogram.aspx

3

17. Ms. Neidig was billed $555.00 for the mammogram.

18. On December 19, 2017, Ms. Neidig returned to Winchester Medical Center for another mammogram.

19. Ms. Neidig was billed and paid $567.00 for the services provided.

20. On June 18, 2019, Ms. Neidig returned to Winchester Medical Center for a mammogram.

21. Ms. Neidig was billed and paid $504.00 for the services provided.

22. For at least the December 2017 service, Ms. Neidig did not pay that day; she made, if anything a partial payment, and she received a complete billing statement at a later date.

23. Winchester Medical Center, during the dates in question, represented itself as an accredited mammography center under the Mammography Quality Standards Act ("MQSA").

24. Winchester Medical Center, during the dates in question, represented itself as being able to perform proper and correct mammography examinations.

25. But for the above representations, Ms. Neidig would not have had Winchester Medical Center perform her mammograms.

26. Winchester Medical Center, during the dates in question, concealed and omitted the fact that it was not performing mammography services in accordance with the MQSA.

27. Winchester Medical Center, during the dates in question, concealed and omitted the fact that it was not performing mammography services in accordance with its accreditation body.

28. Winchester Medical Center, during the dates in question, concealed and omitted the fact that it was not performing proper and correct mammography examinations.

4

29. In July 2019, federal accreditation inspectors found that Winchester Medical Center staff were not accurately positioning or compressing women's breasts during mammograms. (See Exhibit 1, FDA Action Report).

30. This resulted in the Food and Drug Administration ("FDA") declaring that select mammograms performed by Winchester Medical Center had "serious image quality deficiencies," and that these deficiencies were a "serious risk to human health." (Exhibit 1).

31. The federal inspectors stated that mammograms performed at Winchester Medical Center between June 20, 2017, and August 31, 2019, would be of reduced quality, and forced Valley Health to inform consumers that "The FDA determined that [Valley Health] failed to meet the clinical image quality standards established by our facility's accreditation body, the American College of Radiology (ACR), as required by the FDA." (See Exhibit 2, Valley Health Letter).

32. Defendant adopted the view that mammograms performed between June 20, 2017, and August 31, 2019, would be of questionable accuracy and quality. (See Exhibit 2)

33. The mammograms provided to Ms. Neidig and others were of different, deficient, inferior, and lesser value compared to what Defendant had represented them to be.

34. The mammograms provided to Ms. Neidig were not "quality healthcare."

35. In providing the mammograms to Ms. Neidig, Valley Health did not ensure that she had access to the best resources in the realm of care and wellness.

36. In fact, the mammograms were the worst kind of health care because they gave her and others the impression that that were accurate when in fact they were not dependably accurate.

37. Despite the fact that Ms. Neidig paid the market rate for the mammograms, the mammograms were worthless.

38. Defendant never reimbursed, refunded, or rebated the costs paid by Ms. Neidig.

5

39. At a minimum, Ms. Neidig's ascertainable loss was the value of the worthless mammograms she paid for.

## CAUSES OF ACTION

### COUNT ONE
### Unfair and Deceptive Acts and Practices

40. The Plaintiff incorporates the previous paragraphs as if fully set forth herein.

41. Ms. Neidig is a "consumer" as that term is defined by W. Va. Code § 46A-6-102(2).

42. Defendant is currently and was engaged in the conduct of "trade" or "commerce" as those terms are defined by W. Va. Code § 46A-6-102(6).

43. The mammograms sold by the Defendant to Ms. Neidig were a good and service.

44. West Virginia Law states that it is unlawful, while engaged in trade or commerce, to use "unfair methods of competition and unfair or deceptive acts or practices." W. Va. Code § 46A-6-104.

45. West Virginia law states that it is an unfair or deceptive act to cause "confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services." W. Va. Code § 46A-6-102(7)(B).

46. Defendant violated W. Va. Code §§ 46A-6-104 and 46A-6-102(7)(B) by representing to patients that their facilities and procedures were of a character and grade approved of by the FDA between June 20, 2017, and August 31, 2019, while simultaneously failing to ensure that its mammogram technicians were performing those procedures to the FDA's standards.

47. This falsity creates misunderstanding regarding the approval and/or certification of Winchester Medical Center's mammography services provided during that time frame.

48. W. Va. Code § 46A-6-102(E) states that it is an unfair or deceptive practice to represent "that goods or services have sponsorship, approval, characteristics, ingredients, uses,

6

benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have."

49. Defendant violated W. Va. Code § 46A-6-102(E) by misrepresenting, by affirmative representation and omission, that their mammography services, between June 20, 2017, and August 31, 2019, as services satisfying federal standards for accreditation, containing the benefits of a properly executed mammogram, and as services that did not pose a serious risk to human health.

50. W. Va. Code §46A-6-102(7)(G) states that it is an unfair or deceptive practice to misrepresent that services "are of a particular standard, quality or grade."

51. Defendant violated W. Va. Code §46A-6-102(7)(G) by misrepresenting , by affirmative representation and omission, that their mammography services, between June 20, 2017, and August 31, 2019, were properly executed, did not pose a serious risk to human health, and met federal standards for accreditation.

52. W. Va. Code §46A-6-102(7)(G) states that it is an unfair or deceptive practice to use or employ "any deception, fraud, false pretense or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any goods or services."

53. Defendant violated W. Va. Code §46A-6-102(7)(M) by misrepresenting, by affirmative representation and omission, that their mammography services, between June 20, 2017, and August 31, 2019, were properly executed, did not pose a serious risk to human health, and met federal standards for accreditation.

54. Ms. Neidig previously provided Defendant with a Notice of its Right to Cure under W. Va. Code § 46A-5-108. Defendant responded on October 5, 2020, denying any responsibility.

7

55. Because Plaintiff purchased mammograms that were of different, deficient, inferior, and lesser value compared to what Defendant had represented them to be, Plaintiff has suffered actual out of pocket losses.

56. To the extent affirmative misrepresentations are the basis for Ms. Neidig's claims, the affirmative acts caused her to enter into the transactions at issue.

57. To the extent concealment and omission is the basis of Ms. Neidig's claims, the her actual losses were proximately caused by the concealment and omissions of Defendant.

## COUNT TWO
## Unjust Enrichment

58. The Plaintiff incorporates the previous paragraphs as if fully set forth herein.

59. Defendant received payments from Ms. Neidig for the full value of a properly executed mammograms.

60. By billing for the full value for mammograms that were of different, deficient, inferior, and lesser value, the Defendant unjustly extracted monetary payments from consumers.

61. It would be inequitable for Defendant to retain Ms. Neidig's payments.

62. As a result, Ms. Neidig has been proximately harmed and/or injured and is entitled to recover actual damages and costs from Defendant.

## COUNT THREE
## Breach of Contract

63. The Plaintiff incorporates the previous paragraphs as if fully set forth herein.

64. Defendant and Plaintiff entered into a contract, exchanging mammography examinations and the resulting films for money.

8

65. Included in this contract was the express and implied terms that Winchester Medical Center was an accredited mammography center under the MQSA and was able to perform proper and correct mammography examinations.

66. Defendant breached these terms when its mammography services were different, deficient, inferior, and of lesser value compared to what had been promised.

67. Also included in this contract were the express and implied terms that the mammography would not contain "serious image quality deficiencies."

68. Defendant breached these terms by providing mammography examinations with serious deficient that were a "serious risk to human health."

69. As a result, Ms. Neidig has been proximately harmed and/or injured and is entitled to recover actual damages and costs from Defendant.

## COUNT FOUR
### Fraudulent, Deceptive, or Misleading Representations

1. The Plaintiff incorporates the previous paragraphs as if fully set forth herein.

2. When Plaintiff received mammography services, and later the bills, she incurred a duty to repay that financial obligation.

3. When Defendant billed Plaintiff for the past mammography services, Defendant did not inform Plaintiff that the mammograms she received were worthless.

4. Defendant violated W. Va. Code § 46A-2-127 because when Defendant went to collect the money it was owed it did so using fraudulent, deceptive, or misleading representations.

5. W. Va. Code § 46A-2-127(h) finds a violation of this section includes "[a]ny false representation or false impression about the status or true nature of or the services rendered by the debt collector or his business."

9

6. Ms. Neidig previously provided Defendant with notice of its Right to Cure under W. Va. Code § 46A-5-108. Defendant responded on October 5, 2020, denying any responsibility.

7. Because Plaintiff purchased mammograms that were of different, deficient, inferior, and lesser value compared to what Defendant had represented them to be, Plaintiff has suffered actual out of pocket losses.

## CLASS ACTION ALLEGATIONS

8. The Plaintiff incorporates the previous paragraphs as if fully set forth herein.

9. This action is brought and may properly be maintained as a class action pursuant to Rule 23 of the West Virginia Rules of Civil Procedure.

10. Plaintiff brings this action on behalf of herself and those defined as consumers who between June 20, 2017, and August 31, 2019, received mammography services from Defendant and were residents of West Virginia — collectively referred to as the "Class."

11. On information and belief, the Class consists of over 100 members, and the prospective class members are so numerous that joinder of all class members is impracticable.

12. Plaintiff Elaine Neidig's claims are typical of the claims of the Class, and Plaintiff Elaine Neidig will fairly and adequately protect the interests of the Class with respect to the appropriate common issues of fact and law and has hired counsel competent to prosecute the said action for and on behalf of the Plaintiff and the Class.

13. The prosecution of this civil action by all Plaintiffs in separate actions would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, could as a practical matter be dispositive of the interests of the other members of the Class, not parties and/or substantially impair or impede their ability to protect their interests, and/or Defendant have acted or refused to act on grounds generally applicable to the Class, making final injunctive relief or corresponding declaratory relief with respect to the class as a whole appropriate.

14. There are numerous questions of law and fact common to the Class.

15. The interests of the members of the Class, as to common questions of law and fact, in individually controlling the prosecution of separate actions do not outweigh the benefits of a class action as to those issues.

16. The difficulties in the management of this Class as a class action are outweighed by the benefits it has with respect to disposing of common issues of law and fact as to a large number of litigants, and it is desirable to concentrate the litigation in one forum for the management of this civil action due to the number of cases that may very well be filed and/or are presently pending in other jurisdictions.

17. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

18. Plaintiff Elaine Neidig is a member of the Class she seeks to represent. The members of the Class are so numerous that joinder is impracticable and could involve hundreds of litigants and the members of the Class in all other respects are similarly situated as required under Rule 23 of the West Virginia Rules of Civil Procedure and the Class complies with the requirements thereof.

19. Plaintiff Elaine Neidig is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and consumer litigation and is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

# DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

a) actual damages;

b) statutory damages for violations of the WVCCPA, as authorized by W. Va. Code § 46A-6-106 and W. Va. Code § 46A-5-101;

c) plaintiff's cost of litigation, including attorney's fees, court costs, and fees, pursuant to W. Va. Code §§ 46A-5-106, 46A-5-104;

d) compensatory damages for the unjustly depreciated value of purchased mammograms;

e) disgorgement of wrongfully obtained and retained profits;

f) contract damages; and

g) such other and further relief as this Court may deem just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

                                  **Respectfully Submitted,**
                                  **ELAINE NEIDIG**
                                  *By counsel*

/s/ *Graham B. Platz*
Anthony J. Majestro (WVSB 5165)
Graham B. Platz (WVSB 14093)
POWELL & MAJESTRO PLLC
405 Capitol Street, Suite 807
Charleston, WV 25301
Tel: 304-346-2889
Fax: 304-346-2895
amajestro@powellmajestro.com
gplatz@powellmajestro.com

Stephen G. Skinner (WV Bar No. 6725)
Shawn H. Hogbin ( WV Bar No. 14258)
SKINNER LAW FIRM
115 E. Washington Street
P. O. Box 487
Charles Town, WV 25414
(304) 725-7029
sskinner@skinnerfirm.com
hogbin@skinnerfirm.com